UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WHITE PLAINS HOUSING AUTHORITY,

        Plaintiff,

-against-

GETTY PROPERTIES CORPORATION, TYREE
ENVIRONMENTAL CORPORATION, SINGER REAL
ESTATE GROUP, LLC, MICHAEL C. KENNY,
KENNETH C. SEUS, and MARIANINA OIL CORP.,

        Defendants.

GETTY PROPERTIES CORPORATION, TYREE
ENVIRONMENTAL CORPORATION, SINGER REAL
ESTATE GROUP, LLC, MICHAEL C. KENNY, and
KENNETH C. SEUS,

        Third-Party Plaintiffs,

-against-

MARIANINA OIL CORP.,

        Third-Party Defendant.

OPINION & ORDER

No. 13 Civ. 6282 (NSR)

NELSON S. ROMÁN, United States District Judge

    Defendant Marianina Oil Corp. ("Marianina" or "Defaulting Defendant") seeks to set aside a default judgment entered against it when it failed to appear or defend against the claims brought against it by Plaintiff White Plains Housing Authority (the "Housing Authority") and Defendants / Third-Party Plaintiffs Getty Properties Corporation, Tyree Environmental



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/25/2017

Corporation, Singer Real Estate Group, LLC, Michael C. Kenny, and Kenneth C. Seus (the "Getty Defendants"). For the reasons that follow, Defaulting Defendant's motion is GRANTED.

## BACKGROUND

This opinion assumes the reader's familiarity with the long procedural history of this case and summarizes only the portions relevant to deciding the instant motion.

Plaintiff, the Housing Authority, initiated this action in late 2013 against the Getty Defendants for the alleged contamination of the land underneath a public housing development located at 159 S. Lexington Ave. in White Plains, New York. (*See* Compl. ¶ 1, ECF No. 1.) The Defendants either owned or operated the adjacent Getty gas station located at 26 East Post Road, or operated treatment systems located on that property, at times relevant to the alleged migration of hazardous materials from the gas station to the parking lot located at the housing development. (*Id.* ¶¶ 11-12, 15, 18, 21, 24-25, 28.) At the time this suit was brought, 350 people, including children and elderly individuals, lived at the development. (*Id.* ¶ 27.)

On March 30, 2015, the Getty Defendants filed a third-party complaint against Marianina alleging that any damages the Housing Authority may have incurred "as a result of gasoline contamination in the soil and groundwater at Plaintiff's [159 S. Lexington Ave.] [p]roperty . . . were caused in whole or in part by discharges [of hazardous materials] occurring at and/or emanating from the 34 East Post Road [p]roperty" where Marianina owned and operated a different gas station. (Third Party Compl. ¶¶ 14-16, 39, ECF No. 67.) Subsequently on August 14, 2015, Plaintiff amended the complaint in the direct action to include Marianina as an additional Defendant. (*See* ECF No. 82.) Marianina did not respond to either complaint. The Court held a conference on October 21, 2015 where all parties were present except for Marianina who did not appear. (*See* Minute Entry of Oct. 21, 2015.)

The Clerk of the Court entered a certificate of default against Marianina on October 27, 2015. (ECF No. 98.) On October 28, 2015, the Court scheduled a hearing for December 1, 2015, for Marianina to show cause as to why a default judgment should not be entered against it for failing to appear or respond in any way to the complaints filed against it. (ECF No. 102.) Neither a representative nor counsel for Marianina appeared at the hearing. (*See* Minute Entry of Dec. 1, 2015.) Accordingly, the Court entered default judgment against Marianina on Plaintiff's claims. (ECF No. 119.)

More than nine months after the default judgment was entered and almost a year and a half since the third-party complaint against it was filed, Marianina surfaced for the first time—requesting that the default judgment entered against it be vacated. (*See* ECF Nos. 166 & 167.) The resulting motion to vacate was fully briefed on February 1, 2017 (ECF No. 192), though Plaintiff has supplemented its opposition by submission dated April 12, 2017. (ECF No. 209.)

**STANDARD ON A MOTION TO VACATE
A DEFAULT OR A DEFAULT JUDGMENT**

After the entry of either a default or a default judgment,[1] the defaulting party may seek to have such an entry set aside. *See* Fed. R. Civ. P. 55(c) & 60(b); *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005) ("if a judgment has entered on the default, the court is authorized to set the judgment aside in accordance with the provisions of Rule 60(b)"). A court "may set aside an entry of default for good cause[.]" Fed. R. Civ. P. 55(c). As for a default judgment, "a district court may vacate a judgment for any of the [] reasons" enumerated in Rule 60(b):

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence . . .; (3) fraud . . ., misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the

---

[1] "Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment." *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005). First, pursuant to Rule 55(a), a plaintiff may request the Clerk of the Court "to enter a default against a party that has not appeared or defended." *Id.* Second, "[h]aving obtained a default, a plaintiff must next seek a judgment by default under Rule 55(b)." *Id.*

3

> judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

*Green*, 420 F.3d at 104 (quoting Fed. R. Civ. P. 60(b)). Since "a default judgment is 'the most severe sanction which the court may apply,'" when "ruling on a motion to vacate a default judgment, all doubts must be resolved in favor of the party seeking relief from the judgment in order to ensure that to the extent possible, disputes are resolved on their merits." *Id.* In weighing the relevant considerations, it is the Court's duty to "provide specific reasons for a denial of a motion to set aside a default" of either variety. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 97 (2d Cir. 1993).

"[T]he standard for setting aside the entry of a default pursuant to Rule 55(c) is less rigorous than the 'excusable neglect' standard for setting aside a default judgment by motion pursuant to Rule 60(b)." *Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981). The considerations, however, are the same under both rules: "whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented." *Id.* at 277 (Rule 55(c)); *see Green*, 420 F.3d at 108 ("We have often emphasized that . . . the court's determination [of a Rule 60(b) motion] must be guided by three principal factors: '(1) whether the default was willful, (2) whether the defendant demonstrates the existence of a meritorious defense, and (3) whether, and to what extent, vacating the default will cause the nondefaulting party prejudice.'"). In egregious cases, "there is no practical difference" between applying Rule 55(c) or 60(b). *See Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 186 n.1 (2d Cir. 2015).

With regard to default judgments specifically, "Rule 60(b)(1) [] permits courts to reopen judgments . . . only on motion made within one year of the judgment," while "Rule 60(b)(6) goes

further [] and empowers the court to reopen a judgment even after one year has passed . . . ." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 393 (1993). The provisions, however, are "mutually exclusive, and thus a party who failed to take timely action due to 'excusable neglect' may not seek relief more than a year after the judgment by resorting to subsection (6)." *Id.* (citation omitted); *see also Ungar v. Palestine Liberation Org.*, 599 F.3d 79, 85 (1st Cir. 2010) (a party may not "cloak a Rule 60(b)(1) motion in the raiment of Rule 60(b)(6)" to extend its time to make such a motion).

"[T]he degree of negligence in precipitating a default is a relevant factor to be considered, along with the availability of a meritorious defense and the existence of prejudice, in determining whether a default judgment should be vacated." *Am. All. Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996). "[W]here a party fails to act with diligence, he will be unable to demonstrate that his conduct constituted 'excusable neglect.'" *State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 177 (2d Cir. 2004). In those circumstances, where "a party demonstrates a lack of diligence in defending a lawsuit, a court need not set aside a default judgment." *Id.* Correspondingly, "[t]o justify relief under subsection (6) [of Rule 60(b)], a party must show 'extraordinary circumstances' suggesting that the party is *faultless* in the delay." *Id.* (emphasis added).

## DISCUSSION

Default was properly entered against Marianina on October 27, 2015 and, after failing to appear or oppose Plaintiff's motion, default judgment was entered against Marianina a month later on December 1, 2015. Defaulting Defendant has made the current motion within the one year time limit applicable to a Rule 60(b)(1) motion. Therefore, in deciding Marianina's motion to vacate the judgment, the Court employs the more rigorous "excusable neglect" standard

pursuant to Rule 60(b) as "guided by three principal factors: '(1) whether the default was willful, (2) whether the defendant demonstrates the existence of a meritorious defense, and (3) whether, and to what extent, vacating the default will cause the nondefaulting party prejudice.'" *Green*, 420 F.3d at 108. This intermediate standard, which is more rigorous than that applied on a motion to set aside a default under Rule 55(c), does not require that Marianina be faultless. *State St. Bank*, 374 F.3d at 177.

## I. Willfulness

Generally, "courts should not set aside a default when it is found to be willful." *Brien v. Kullman Indus., Inc.*, 71 F.3d 1073, 1078 (2d Cir. 1995). "[W]ilfulness in the context of a judgment by default requires 'something more than mere negligence,' such as 'egregious or deliberate conduct,' although 'the degree of negligence in precipitating a default is a relevant factor to be considered.'" *Green*, 420 F.3d at 108; *Bricklayers*, 779 F.3d at 187 ("'it is sufficient' to conclude 'that the defendant defaulted deliberately'"). Thus, gross negligence may weigh against the party seeking to set aside a default judgment, but it does not necessarily precluding relief. *See Am. All. Ins. Co.*, 92 F.3d at 61.

Marianina, through its owners,[2] asserts that it is entirely without fault, claiming that the default and default judgment were a result of its insurance broker and insurance company abdicating their alleged responsibility to defend it. (*See* Codella Aff. ¶ 8, ECF No. 167.) When considering Marianina's contentions, the Court resolves all doubts in its favor and accepts as true that Marianina forwarded a complaint (though likely the third-party complaint of late March 2015) to its insurance broker in April 2015, that it received assurances when it checked in periodically with its broker, that it forwarded other documents to its broker in October 2015, and

---

[2] The shareholders of Defaulting Defendant Marianina Oil Corp. are Frank Codella and his sister, Nancy Maduri. (Codella Aff. ¶ 1 n.1.)

that it left messages for the insurance adjuster allegedly handling the matter but never received a return call. (Codella Aff. ¶¶ 6-7.) Marianina has not provided any information from the brokers or insurance company with regard to the handling of this suit, leaving the Court with only Marianina's version of the events. *See Hensel Phelps Const. Co. v. Drywall Sys. Inc. of S. Florida*, No. 06 Civ. 21755 (MGC), 2007 WL 2433839, at *2 (S.D. Fla. Aug. 22, 2007) (defaulting defendant "did not present an affidavit or declaration from its registered agent regarding how the alleged delay in forwarding the [c]omplaint occurred [and,] [t]hus, the details surrounding the alleged delay . . . remain[ed] enigmatic").

    In certain circumstances, such as an attorney-client relationship, a good faith belief that a third-party is diligently handling a matter is sufficient to negate any inference of willfulness. *See S.E.C. v. McNulty*, 137 F.3d 732, 740 (2d Cir. 1998); *State St. Bank*, 374 F.3d at 177. Although the Second Circuit has not directly addressed the level of diligence required between an insured and its insurer, in a related context in *Am. All. Ins. Co.* it reversed the denial of a motion to vacate a default judgment that was caused by a "filing mistake" by the insurance company's "in-house counsel's clerk," declining to expand willfulness to include carelessness. *Am. All. Ins. Co.*, 92 F.3d at 61 (notices for a case went "unnoticed for two months" when they were sent directly to the firm's files by "an office manager who assumed that the case had been assigned and was being diligently handled by a staff attorney"—demonstrating gross negligence but not willful or deliberate conduct); *accord. Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 784 (8th Cir. 1998) ("a good faith, relatively brief default in the filing of an initial pleading, caused by poor communication between [company] and its insurer, and cured *within one day* once [the company] learned of its mistake" was grounds for setting aside default); *see also Gonzalez v.*

7

*City of N.Y.*, 104 F. Supp. 2d 193, 196 (S.D.N.Y. 2000) ("individual defendants' failure to answer [was] more akin to an administrative oversight").

Similarly, where a "party seeking to set aside [a] default judgment submit[s] affidavits showing that it had 'regularly inquired about the status of the case and received assurances that its interests were being represented,'" such a misunderstanding, nurtured by intentionally misleading statements, can provide the basis for finding "excusable neglect" in this District. *Belizaire v. RAV Investigative & Sec. Servs., Ltd.*, 310 F.R.D. 100, 105 (S.D.N.Y. 2015) (citation omitted); *S.E.C. v. Breed*, No. 01 Civ. 7798 (CSH), 2004 WL 1824358, at *11 (S.D.N.Y. Aug. 13, 2004) ("willfulness may not be imputed to a client who *does* monitor his case" where the client shows "that [its] former counsel made false assurances regarding the status of the lawsuit") (emphasis added). Only where a party—aware of the pending action—"makes no showing that he has made any attempt to monitor [the] handling of the lawsuit" will the neglect of the action be imputed to the defendant and foreclose relief. *See McNulty*, 137 F.3d at 740 (failure imputed to the defendant where there was no "indication that [he] had done anything whatsoever to prevent the default's occurrence"); *see also Baez v. S.S. Kresge Co.*, 518 F.2d 349 (5th Cir. 1975) (defaulting party "possessed the papers in ample time to prevent its own injury" and could not simply shift the blame to negligent third-party: "minimal internal procedural safeguards could and should have been established which would have prevented th[e] loss").

Here, Marianina's conduct was certainly not laudatory. The company appeared relatively disinterested in the status of this case until it was nine months too late (*i.e.*, after default judgment was entered). Marianina never independently investigated the status of the case, asked its company lawyer about the case, or responded at all until it "recently" learned of the default and began taking steps to vacate the judgment. (Codella Aff. ¶ 7 (Marianina was "surprised" to

discover "that [its] brokers were mistaken").) *Cf. Yeschick v. Mineta*, 675 F.3d 622, 629-31 (6th Cir. 2012) (defaulting defendant's attorney's "neglect in not checking the docket was not excusable" but rather "a lack of the diligence required to make out a successful claim of excusable neglect"). The company was content to receive assurances from its insurance broker that the case was being handled. Months later, "near the end of 2015," it learned the alleged identity of the adjuster handling the case, but again was content to simply leave messages.

Marianina was aware of being implicated in this lawsuit as soon as the third-party complaint was filed in April 2015, and the company could have avoided this default by, for example, checking with the Court to see if counsel for its insurance company had entered a notice of appearance on its behalf, responded to any of the complaints, or taken any affirmative steps at all. This is especially true in light of the Housing Authority's efforts to contact Marianina, including nailing a notice of endangerment on one of the owners' doors and serving the order to show cause for the default judgment hearing on that same owner at her residence. (Pl. Mem. at 13-14); *see Florida Physician's Ins. Co. v. Ehlers*, 8 F.3d 780, 784 (11th Cir. 1993) (noting that plaintiff had "made extensive efforts to notify" the defaulting defendant). And Marianina, a company involved in litigation in the past and a holder of an environmental insurance policy, surely was aware of the importance of monitoring such an action. (Pl. Mem. at 17-18); *see also Boston Post Rd. Med. Imaging, P.C. v. Allstate Ins. Co.*, 221 F.R.D. 410, 413 (S.D.N.Y. 2004) (court concluded it was "preposterous" that Allstate was "too confused" to respond to a complaint, noting the distinction between the multistate insurer and "the owner of a 'Mom and Pop' neighborhood business").

Some Courts outside of this Circuit have concluded that similar conduct does not constitute sufficiently diligent monitoring of the progress of pending litigation to ensure a party's

9

interests are being protected. *Florida Physician's Ins. Co.*, 8 F.3d at 784 (defendant's "inability to contact [his attorney] should have alerted him of potential problems in his representation" in the out-of-state proceedings); *see also, e.g.*, *Williams v. Lakin*, No. 06 Civ. 0515 (CVE)(PJC), 2007 WL 2114649, *4 (N.D. Okla. July 20, 2007) (default judgment would not be excused where there was "a lack of due diligence on the part of defendants to keep informed about the status of their case, even if defendants believed that their insurer was handling the case"). But in the Second Circuit, the level of disregard has to be slightly more egregious to become inexcusable. *See, e.g.*, *State St. Bank*, 374 F.3d at 177 ("defendants offered no explanation regarding why they could not, with diligence, have found th[e] [alleged new evidence] in their inventory during the course of their earlier efforts to defend against the default judgment").

Therefore, the Court finds that Marianina's default must be viewed as "excusable neglect" under Rule 60(b)(1) based on the sworn allegations that its insurance broker falsely assured it that the matter was being handled.[3] *State St. Bank*, 374 F.3d at 177; *Murray Eng'g, P.C. v. Windermere Properties LLC*, No. 12 Civ. 0052 (JPO), 2013 WL 1809637, at *4 (S.D.N.Y. Apr. 30, 2013) (default set aside even though client "appear[ed] to have given the lawsuit no thought between the time he engaged [counsel] and the time he received the Notice of Inquest"); *Murphy v. Snyder*, No. 10 Civ. 1513 (JS)(AKT), 2013 WL 934603, at *9 (E.D.N.Y. Mar. 8, 2013), *report and recommendation adopted*, 2013 WL 1335757 (E.D.N.Y. Mar. 29, 2013) (defaulting defendants "relied on the assurances of [counsel] that th[e] case was progressing normally when the [law firm], for all intents and purposes, had abandoned the litigation"). Marianina's alleged reliance on its insurance broker's assurances (Codella Aff. ¶ 7), keep its obliviousness slightly behind the willful line as it has been drawn by the Second Circuit.

---

[3] The Court notes, however, that such ignorance of the status of the action cannot be considered "faultless" as required by Rule 60(b)(6). *State St. Bank*, 374 F.3d at 177.

## II. Existence of a Meritorious Defense

Although the Court has determined that Marianina's default was not willful as that term is limited by the Second Circuit, "[t]he existence of a meritorious defense is a key factor in the Rule 60(b) analysis." *Green*, 420 F.3d at 109. "[W]ithout a valid defense, there is 'no point in setting aside the default judgment.'" *New York v. Green*, No. 01 Civ. 196A, 2004 WL 1375555, at *7 (W.D.N.Y. June 18, 2004), *aff'd as modified*, 420 F.3d 99 (2d Cir. 2005). In fact, "'the absence of such a defense [alone] is sufficient to support [a] district court's denial' of a Rule 60(b) motion." *Id.* (quoting *State St. Bank*, 374 F.3d at 174). "In order to make a sufficient showing of a meritorious defense . . . the defendant need not establish his defense conclusively, but he must present evidence of facts that, if proven at trial, would constitute a *complete* defense." *McNulty*, 137 F.3d at 740 (emphasis added).

Here, Marianina proffers two alleged facts: extensive prior remediation and, critically, absence of new spillage. (*See* Codella Aff. ¶ 9.) The Housing Authority contests these facts, referring to a site investigation report that it argues "confirms that the groundwater under the Marianina's gasoline station is heavily contaminated." (Pl. Supp. Letter & Ex., ECF No. 209.) Nevertheless, if Marianina's assertions are true, then they may have a complete defense, *i.e.*, if the "state of the art spill detection systems and ground water monitoring systems [] show[] no evidence . . . of any ground water contamination on the Property" (Codella Aff. ¶ 5), then Marianina would not be a liable polluter.[4] In this regard, the company has presented the bare minimum for a potentially complete defense. Thus, the conflict between Plaintiff and Marianina, resolved in Marianina's favor as it must be for this motion, will have to be resolved after discovery at either summary judgment or by the trier of fact at a liability phase of trial.

---

[4] In these circumstances, defense counsel would be wise to provide the legal framework under which these facts would constitute a meritorious defense, rather than invoking a mostly conclusory argument with minimal factual support. (*See* Def. Mem. at 7.)

### III. Potential for Prejudice

Although the "absence of prejudice to the nondefaulting party would not in itself entitle the defaulting party to relief from the judgment," *McNulty*, 137 F.3d at 738, here there is a concern that the ramifications of reopening the judgment would go beyond additional delay. Given the complex nature of the environmental impact studies involved in this action, it is very likely that discovery may be heavily impacted and the existing expert analyses may need to be reworked to consider the relevant sources of the pollution. *See Green*, 420 F.3d at 110.

* * *

In accordance with the Second Circuit's preference for a resolution of issues on their merits rather than by default, the Court will vacate the judgment. *See Green*, 420 F.3d at 104; *cf. Peterson v. Term Taxi, Inc.*, 429 F.2d 888, 891 (2d Cir. 1970) ("a failure of good judgment" amounting to "an affront to the court" did not justify the "imposition of the most 'drastic remedy' available"). Despite the real potential for prejudice, Marianina's default was not willful under the Circuit's lenient standard, and the company has, though just barely, presented the potential for a meritorious defense. Although the Court is setting aside the default judgment, it is notably unimpressed with Marianina and its counsel's conduct thus far.

The Court takes the opportunity to advise the company and its counsel that any further dilatory conduct may result in the imposition of sanctions against them to compensate the Housing Authority for the costs incurred in a) seeking the default judgment, b) opposing the motion to vacate the judgment, c) revising any analyses to account for the addition of Marianina as a party to the action, and d) addressing any continuing defaults in this action. *See State St. Bank*, 374 F.3d at 180; *see also Flora v. JPS Elastomerics*, No. 08 Civ. 0031, 2009 WL 1956495, at *5 (W.D. Va. July 7, 2009) (vacating default but awarding sanctions "to deter further dilatory action by this defendant and others").

## CONCLUSION

For the foregoing reasons, Defendant Marianina's motion to set aside the default judgment against it is GRANTED. Defendant has until May 16, 2017 to file responsive pleadings. Failure to comply with the Court's orders may result in sanctions, including the reentry of default against Marianina. The parties are directed to inform Magistrate Judge McCarthy of this decision and to modify their case management plan accordingly.

The Clerk of the Court is respectfully directed to set aside the entry of default against Marianina and vacate the December 1, 2015 judgment at ECF No. 119. The Clerk is also directed to terminate the motion at ECF No. 192.

Dated: April 25, 2017  
White Plains, New York

SO ORDERED:

_____  
NELSON S. ROMÁN  
United States District Judge